IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Eartha Windom, et al., | NO. C 04-05398 JW |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| Stanford Hospital and Clinics, et al., | |
| Defendants. | |

## I. INTRODUCTION

In the Summer of 2003, a mother twice took her five-year-old son to Stanford Hospital emergency room for treatment for various symptoms, including constipation, stomach pain, fever, loss of appetite, lethargy and back pain. During the second visit, the child was seen by Dr. Kapoor, who took blood tests. After the child was released, the results of the blood test led the physician to believe that he might have a potentially serious staph infection. The doctor contacted the boy's mother and requested her to return him to the hospital. When the mother refused, saying that in her opinion the boy was fine, the doctor telephoned a county social service worker, who called the police for help to bring the boy in for treatment. When the police arrived at the home, the mother refused to give information on the location of the child.

1  The mother was arrested. Shortly afterward, the child was brought home and was taken to the hospital.
2  The boy was hospitalized for six days, during which he underwent extensive tests.

3  The parents filed this lawsuit against the doctor, the hospital, the social service worker, the police
4  officers and government entities for whom the individuals are employed, seeking damages for violations of
5  federal civil rights and for various state law claims.

6  The case is before the Court on motions by some of the Defendants to dismiss the complaint
7  against them on the ground that the Plaintiffs have no legal basis for recovering against them based on the
8  alleged facts. For the reasons stated, these motions are GRANTED.

## II. BACKGROUND

10  Plaintiffs are Eartha Windom ("Ms. Windom"), Shawn Thomas ("Mr. Thomas"), in their individual
11  capacities and as guardians ad litem for their minor son D'Shawn Thomas ("D'Shawn") (collectively
12  "Plaintiffs").

13  Defendants are Stanford Hospital and Clinics ("Stanford Hospital"), Dr. Maya Kapoor, M.D.
14  ("Dr. Kapoor") (sued erroneously as Dr. Mya Kapoor, M.D.), County of San Mateo ("County"), Nancy
15  Nieves, a social worker employed by Child Protective Services, a Department of the County of San Mateo
16  ("Ms. Nieves"), City of East Palo Alto ("City"), Officer M. Torres ("Officer Torres"), and Officer J.
17  Talfinger ("Officer Talfinger") (collectively "Defendants"). Plaintiffs allege that Defendants' actions violate
18  their rights under title 42 U.S.C. §§ 1983, 1985, California Constitution Article 1 § 1, and other state law
19  tort claims.

20  For purposes of the motions, the Court focuses on the allegations of the Complaint. It alleges that
21  on or about July 29, 2003, D'Shawn, a five-year-old, complaining of constipation, stomach pain and fever,
22  loss of appetite, and lethargy was taken to Stanford Hospital emergency room by his mother, Ms. Windom.
23  The medical staff at Stanford Hospital examined and tested D'Shawn for possible appendicitis, but the
24  results were negative. The staff released D'Shawn with instructions to follow up the next day with his
25  regular pediatrician, or to return to the emergency room if his symptoms worsened. (Complaint ¶ 8.)

1	The next day, Ms. Windom contacted a pediatrician, and was instructed to obtain an over-the-
2	counter laxative for D'Shawn and to bring D'Shawn in for an appointment on August 4, 2003. Ms.
3	Windom purchased and administered the laxative as per instruction. (Complaint ¶ 9.)

4	Two days later, on July 31, 2003, Ms. Windom again took D'Shawn to the emergency room at
5	Stanford Hospital for complaints of pain and stiffness in his back. Dr. Kapoor took blood samples and
6	sent them to a laboratory for analysis. She also administered a spinal tap to check for meningitis, but sent
7	D'Shawn home for a second time when he tested negative for meningitis. (Complaint ¶ 10.)

8	On August 1, 2003, the laxative apparently took effect and D'Shawn had a bowel movement,
9	following which his fever dropped nearly to normal. He allegedly began eating normally, and was no longer
10	lethargic. (Complaint ¶ 11.)

11	Meanwhile, on August 2, 3003, Dr. Kapoor received the blood test results which allegedly
12	revealed the possibility of a Staphlycoccus aureus ("staph") infection. Responding to this information, Dr.
13	Kapoor and her staff repeatedly telephoned Ms. Windom, urging her to bring D'Shawn back to the
14	hospital for appropriate treatment. Ms. Windom declined to do so. Ms. Windom allegedly explained to
15	the medical staff that D'Shawn's symptoms had nearly disappeared. Ms. Windom communicated that she
16	intended to have his pediatrician examine D'Shawn at the clinic at the scheduled visit. (Complaint ¶ 12.)

17	The Complaint alleges that Dr. Kapoor "enlisted the assistance of a San Mateo County child
18	protective services official [Nancy Nieves] to compel the transporting of D'Shawn to Stanford Hospital for
19	the desired tests." Nieves arranged for the dispatch of East Palo Alto Police Officers and an ambulance.
20	(Complaint ¶ 13.)

21	On the evening of August 2, 2003, Officers, Torres and Talfinger, arrived at Ms. Windom's home.
22	Once there, one of the police officers reached Dr. Kapoor by telephone. Dr. Kapoor allegedly told them
23	that D'Shawn needed to come to Stanford Hospital because the possibility existed that he had a life-
24	threatening disease. (Id.)

25	The officers asked Ms. Windom the whereabouts of the child. Ms. Windom informed the Officers
26	that D'Shawn was out with his father and in fact was not sick. The Officers asked Ms. Windom to have
27	her husband bring D'Shawn back home so the paramedics could check D'Shawn and allegedly promised

her that D'Shawn would not be transported to Stanford Hospital if he appeared healthy. Ms. Windom "declined to do so." (Id.)

At some point, Ms. Windom's sister "stepped in" to telephone Mr. Thomas and directed him to return home with D'Shawn. While waiting for Mr. Thomas to arrive, the Officers arrested Ms. Windom on charges of child endangerment, handcuffed her and put her in a police car parked nearby. (Id.)

Upon his arrival, Mr. Thomas turned D'Shawn over to the paramedics. The Complaint alleges that "[t]he examination revealed no indication that D'Shawn was sick," but nevertheless, the Officers kept Ms. Windom under arrest and transported D'Shawn by ambulance to Stanford Hospital. (Id.)

Under the guidance of Dr. Kapoor, the hospital staff kept D'Shawn for six days, administering intravenous and intramuscular antibiotics to combat the alleged staph infection. (Complaint ¶ 14.)

Ms. Windom was incarcerated until August 13, 2003, when bail in the sum of $50,000 was posted for her release. Additionally, Ms. Windom was released from jail on a "no contact" condition with D'Shawn. The "no contact" condition was later removed in September of 2003. The child endangerment charges were subsequently dropped. (Complaint ¶ 15.)

Plaintiffs initially filed their Complaint against Defendants in San Mateo County Superior Court. Defendants removed the lawsuit to this Court pursuant to 28 U.S.C. 1331, on the ground that the Complaint asserts claims within the original jurisdiction of this Court to adjudicate claims arising under the laws of the United States. The Court is asked to exercise supplemental jurisdiction over the state law claims.

After setting forth the events leading up to Ms. Windom's arrest and D'Shawn's hospitalization, the Court regards the Causes of Action as follows:[1]

| First Cause of Action: | 42 U.S.C §1983, violation of each Plaintiffs' right to privacy against all Defendants, as persons acting under color of state law. |

---

[1] The allegations of what each Defendant allegedly did are contained in Paragraphs 1 through 17 of the Complaint. Each Cause of Action re-alleges Paragraphs 1 through 17. Therefore, it might appear that Plaintiffs are claiming damages for every act against every Defendant in every Cause of Action. However, the allegations in each Cause of Action lead the Court to conclude that Plaintiffs have stated a particular Cause of Action against particular Defendants.

4

| | | |
|---|---|---|
| | Second Cause of Action: | 42 U.S.C §1983, violation of D'Shawn Thomas' right to be free from unreasonable seizure by Defendants Torres and Talfinger as persons acting under color of state law and by all other Defendants as aider and abettors. |
| | Third Cause of Action: | 42 U.S.C §1983, violation of Eartha Windom's right to be free from false arrest (unreasonable seizure) by Defendants Nieves, Torres and Talfinger as persons acting under color of state law; and against Defendants County and City because the conduct of the individual Defendants was pursuant to a custom, policy or practice. |
| | Fourth Cause of Action: | 42 U.S.C §1983, violation of Eartha Windom's right to be free from malicious prosecution (unreasonable seizure and due process) by all government Defendants as persons acting under color of state law and against all other Defendants as aiders and abettors. |
| | Fifth Cause of Action: | 42 U.S.C §1983, conspiracy to violate the right of each Plaintiff to be free from unreasonable seizure or due process violation by each government Defendant as person acting under color of state law and against the other Defendants as co-conspirators. |
| | Sixth Cause of Action: | 42 U.S.C §1985, conspiracy by all Defendants to take adverse actions against all Plaintiffs on the basis of race. |
| | Seventh Cause of Action: | Invasion of Privacy of all Plaintiffs by all Defendants. |
| | Eighth Cause of Action: | False Imprisonment of Plaintiff D'Shawn Thomas by Defendants Kapoor and Stanford Hospital. |
| | Ninth Cause of Action: | Assault and Battery of Plaintiff D'Shawn Thomas by Defendants Kapoor and Stanford Hospital. |

| | | |
|---|---|---|
| 1 | Tenth Cause of Action: | Intentional Infliction of Emotional Distress upon all Plaintiffs by |
| 2 | | Defendants Kapoor and Stanford Hospital. |
| 3 | Eleventh Cause of Action: | Negligent Infliction of Emotional Distress upon all Plaintiffs by |
| 4 | | Defendants Kapoor and Stanford Hospital |
| 5 | Twelfth Cause of Action: | Civil Conspiracy by all Defendants to invade privacy of and inflict |
| 6 | | emotional distress upon all Plaintiffs; and to falsely imprison and |
| 7 | | commit assault and battery against Plaintiff D'Shawn Thomas. |

Presently before this Court are motions by Defendants Stanford Hospital, Dr. Kapoor, San Mateo County and Nancy Nieves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants City of East Palo Alto, Officer Torres and Officer Talfinger have not moved for dismissal of the Complaint against them at this time. Unless otherwise indicated in this Order, references to Defendants will be only to the moving Defendants.

### III. STANDARDS

Pursuant to FED. R. CIV. P. 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistrer v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973). However, mere conclusory allegations couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). A complaint should not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Moore v. City of Costa Mesa,

886 F.2d 260, 262 (9th Cir. 1989). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d. 1122, 1129 (9th Cir. 2000).

## IV.  DISCUSSION

**A.      Defendants, San Mateo County and Nancy Nieves' Motion to Dismiss**

Defendants County and Nieves move to dismiss both the federal civil rights claims and the state law claims on various grounds. In its analysis, the Court does not address every ground asserted because it finds a sufficient dispositive basis for its judgment. The Court will first address the Causes of Action attempting to state a claim under Section 1983.

**1.      Plaintiffs' claims under Title 42 U.S.C. § 1983 against Nancy Nieves.**

The First through Fifth Causes of Action of Plaintiffs' Complaint allege that Nancy Nieves telephoned the East Palo Alto Police Department and requested assistance in returning D'Shawn to Stanford Hospital for medical care. This conduct is alleged to have violated Section 1983.

Title 42 U.S.C. §1983 creates a right of action against any person who, "under color of statute, ordinance, regulation, custom, or usage, of any state or territory of the District of Columbia," deprives another "of any rights, privileges, or immunities secured by the constitution and laws." 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must plead two essential elements: (1) that defendant acted under color of state law; and (2) that defendant caused plaintiff to be deprived of rights secured by the Constitution or federal statues. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988); Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986); Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir. 1983).

For purposes of the motions, the Court accepts as established that Defendant Nieves was acting under color of state law. The issue is whether the conduct alleged in the Complaint constitutes a basis for relief for a violation of federal constitutional rights.

In the Section 1983 Causes of Action, Plaintiffs allege that Ms. Nieves' conduct with respect to D'Shawn constitutes violations of constitutional rights to be free from violation of right to privacy, unreasonable seizure, and due process of law.

7

As a matter of law, parents have a constitutionally protected interest in the custody and care of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982). This interest is not absolute. In an emergency situation, a state agency may remove children from their parents' custody when the children are subject to immediate or apparent danger or harm. Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991).

Defendant Nieves contends that under the facts alleged, no claim is stated because as pled, she is absolutely or qualifiedly immune from liability. Initially, no judicial process was involved in this case. Therefore, absolute immunity cannot be the basis of a motion to dismiss.[2]

Under the doctrine of qualified immunity, government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Social workers are shielded from liability where their official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Caldwell, 928 F.2d at 333, citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Supreme Court has held that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). More importantly, qualified immunity is an "immunity from suit rather than a mere defense to liability." Id. Thus, if on the basis of the pleaded facts, a defendant is immune from liability, the complaint can be dismissed for failure to state a claim. See Stacy Butler, et al. vs. San Diego District Attorney's Office, et al., 370 F.3d 956, 963 (9th Cir. 2004) (If, taking the facts as stated in the complaint, the defendant is entitled to immunity, no discovery should be permitted and the case should be dismissed.) (citing Mitchell, 472 U.S. at 526).

---

[2] The Ninth Circuit has held that social workers enjoy absolute immunity from damages when performing quasi-judicial actions and when performing "quasi-prosecutorial" functions. See Coverdell v. Dep't of Social & Health Services, 834 F.2d 758, 764-765 (9th Cir. 1987); See also Meyers v. Contra Costa County Dep't of Social Services, 812 F.2d 1154, 1156-57 (9th Cir. 1987). Defendants County and Nieves contend that social workers are entitled to absolute immunity when they are involved in the investigatory or instituting phase of a dependency case. However, the Ninth Circuit has made clear that where social workers are not acting under the supervision of a court, only qualified immunity may be claimed. See Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991). In this case, Nieves' actions did not aid in the preparation or presentation of a case to the juvenile court, nor were her actions taken in connection with or incident to ongoing child dependency proceedings. Id. Accordingly, to the extend that Nieves should be afforded immunity for her actions, it is qualified and not absolute.

The issue therefore, is whether the Ms. Nieves' conduct as alleged in the Complaint violated any clearly established constitutional or statutory rights of the Plaintiffs.

Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000).

In this case, Ms. Nieves, acting on information from Dr. Kapoor, a medical doctor, that a child brought to the Stanford Hospital emergency room possibly had a serious infection; that the doctor had requested the mother to return the child to the hospital, but the mother had refused. Ms. Nieves called the police and requested that it dispatch officers to investigate. There is nothing alleged in the Complaint which would serve as a basis for finding that a social worker in Ms. Nieves' position would have known that his or her acts were violating a constitutional right of the parents or of the child. Indeed, had Ms. Nieves failed to follow up on Dr. Kapoor's report of a possible child neglect or abuse situation, she would have failed to perform a duty imposed on her by law.

The Court's conclusion is not altered by Plaintiffs' argument that there was no basis for Ms. Nieves' action because Dr. Kapoor did not assert that D'Shawn *had* a "life threatening disease," but rather only that is was *possible* that he had such a disease. Plaintiffs properly cited Wallis, which stands for the proposition that officials need "reasonable cause" to believe that a child is in imminent danger of serious bodily injury before they can remove a child from the custody of its parents. Wallis, 202 F.3d at 1138. However, Plaintiffs ignore the important standard established by Wallis for circumstances where removal of a child is necessary, that is, only *reasonable cause* not *probable cause* is required. Clearly, all the law asks for is that Ms. Nieves' action was within the bounds of common sense.

Further, this case is clearly distinguished from Wallis, where the court held that there would not be reasonable cause to remove a child based upon a report from a "mentally ill relative." Id. at 1140. While citing this distinction, Plaintiffs ignore the vast differences between a report from a mentally ill relative and

1  one that is from a medical doctor from a well-respected hospital.  The Court finds that based on Dr.

2  Kapoor's report, Ms. Nieves had reasonable cause to believe that D'Shawn's life was in danger.

3  As to the Sixth Cause of Action under Section 1985 for conspiracy by Ms. Nieves, among other

4  Defendants, to take adverse actions against Plaintiffs on the basis of race, Plaintiffs have failed to plead any

5  facts showing that Ms. Nieves' decision to contact the police so that he could be taken to the hospital was

6  motivated by race.  The Court is sadly aware of circumstances where government action or inaction has

7  been based on race.  However, this Complaint alleges vigilant conduct by a social worker, not racial

8  discrimination.

9  There are no alleged facts which would entitle Plaintiffs to recover against Ms. Nieves for "aiding

10 and abetting" the other Defendants.  Her conduct, as alleged, was proper even if some other Defendant

11 took actions which if proven would subject that Defendant to liability.

12 With respect to the claims against the County, it is established that "[g]enerally, a municipal entity,

13 can be sued as a 'person' under § 1983.  Although a municipal defendant is not subject to liability based on

14 a theory of respondeat superior, a claim against a municipal defendant may be stated if the plaintiff alleges

15 there is an unconstitutional policy or custom of that municipality that caused her injury.  Moreover, a suit

16 against public employees in their official capacities is equivalent to a claim against their municipal employer."

17 Santos v. County of Los Angeles Dep't of Children and Family Services, 299 F. Supp. 2d 1070, 1078

18 (C.D. Cal.) (2004); citing Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992); Kentucky v.

19 Graham, 473 U.S. 159, 166 (1985); Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978);

20 Ortez v. Washington County, State of Oregon, 88 F.3d 804, 811 (9th Cir. 1996).

21 Thus, if on the facts alleged, there is no basis for a constitutional violation by an individual

22 government employee, there can be no recovery against the government entity employing the individual

23 unless Plaintiffs allege a municipal policy or custom that the County followed in causing their injury.

24 Plaintiffs have not pled any such facts.  Accordingly, all Section 1983 Causes of Action and the Section

25 1985 claim against Defendant Nancy Nieves and San Mateo County are dismissed.

26 The Federal Rules of Civil Procedure have established a liberal standard of "notice pleading."  A

27 plaintiff's factual pleading is sufficient if it contains "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) & (e)(1).  Dismissal without leave to amend is appropriate only where a court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

Under the facts as alleged, no federal civil rights claims could be stated against Ms. Nieves and San Mateo County.  Accordingly, the dismissal is with prejudice.

### 2. The State Law Claims.

Plaintiffs assert six tort Causes of Action under California law, including one claim arising out of the California Constitution Article 1 § 1 for invasion of right of privacy.

As a condition precedent to suit against a public entity, the California Tort Claims Act (CTCA) requires "the timely presentation of a written claim. . ." to that public entity. Mangold v. California Pub. Util. Comm'n, 67 F.3d 1470 (9th Cir. 1995) (citing Snipes v. City of Bakersfield, 145 Cal.App.3d 861 (1983)); Cal. Gov. Code §§ 905, 945.4, 950.2.  The claim must include "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." Cal. Gov. Code § 910(d); Shoemaker v. Myers, 2 Cal.App. 4th 1407, 1425-26 (1992).  "The purpose of the Act is to provide the accused public entity with sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. . . ." Javor v. Taggart, 98 Cal.App. 4th 795, 804 (2002); Paramount Unified School Dist. v. Teachers Assn. of Paramount, 26 Cal.App. 4th 1371 (1994).

In this case, Plaintiffs never submitted a tort claim.  (Declaration of Mafi in Support of Defendants' Motion to Dismiss ¶ 2.)  Plaintiffs' failure to submit a tort claim is fatal to Plaintiffs' state law claims against these Defendants.  See Nguyen v. Los Angeles County Harbor/UCLA Medical Center, 8 Cal.App. 4th 729, 732 (1992).  Plaintiffs have conceded to this fatality:

> Plaintiffs acknowledge that they did not exhaust the statutory procedure. However, the Seventh Cause of Action arises under California Constitution, and hence is not subject to the statutory claim presentation procedure.  Whereas the Eighth through the Twelfth Causes of Action, would concededly [sic] be subject to the statutory claim presentation procedure if directed against CSM and Nieve [sic], said Causes of Action are instead directed exclusively against Stanford Hospital and Dr. Kapoor, and insofar as construable [sic] otherwise, said Causes of Action are hereby withdraw.

(Plaintiffs' Opp'n to County's Motion at 9.)

11

Contrary to Plaintiffs' contention, courts have held that tort claims, including claims arising under the California Constitution, are barred where a plaintiff fails to file a claim presentation with the government entity. See Dalton v. East Bay Mun. Utility Dist., 18 Cal.App. 4th 1566, 1571 (1993); see also Mangold v. California Public Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Accordingly, the Court dismisses all state law claims against Defendants County and Nieves. This dismissal is with prejudice.

**B.     Defendants Stanford and Kapoor's Motion to Dismiss.**

**1.     Lack of Pre-Law Suit Notice.**

Defendants Stanford and Dr. Kapoor contend that California Code of Civil Procedure § 364 bars this action because Plaintiffs have failed to give the requisite 90-day notice of intent to sue. However, section 365 modifies section 364 to provide only disciplinary action against the Plaintiffs' attorney by the State Bar of California for failing to provide notice. Cal. Civ. Code § 365. Thus, Defendants' contention that Plaintiffs' failure to provide a "notice of intent" bars all actions against them is incorrect.

Additionally, these Defendants contend that since California Penal Code § 11166(f)(3) mandates physicians and hospitals to report known or suspected instances of child neglect or abuse, they are immune from civil rights claims and liability. (Stanford's Motion at 9.) However, this argument fails with respect to Plaintiffs' claims for violations of the civil rights under the federal Constitution. The Ninth Circuit has held that state statutory immunity provisions do not apply to federal civil rights actions. Guillory v. County of Orange, 731 F.2d 1379, 1382 (9th Cir. 1984). The Court explained, "To construe a federal statute to allow a state immunity defense 'to have controlling effect would transmute a basic guarantee into an illusory promise," which the supremacy clause does not allow." Id. at 1382 (citations omitted).

Accordingly, the Court proceeds to decide if the facts which have been alleged constitute cognizable claims against Stanford and Dr. Kapoor.

**2.     Plaintiffs' Federal Claims.**

Plaintiffs contend that based on the facts alleged they are entitled to recover from Defendants Stanford and Dr. Kapoor under Sections 1983 and 1985.

### a. **Plaintiffs failed to plead any facts showing that Defendants Stanford or Dr. Kapoor acted under color of state law.**

As discussed above, Title 42 U.S.C §1983 creates a right of action against any person who acts "under color of statute, ordinance, regulation, custom, or usage, of any state." If, as in the case of Defendants Stanford and Dr. Kapoor, the defendant is not a government employee, facts must exist which show that the private actor was acting under government authority. Factors determinative of whether a private defendant acted under color of state law include: (1) the government compelled the action using its "coercive power" or provided "significant encouragement, either overt of covert" for the action; (2) the government and the private actor willfully participated in joint activity; (3) the government controlled the nominally private actor; or (4) the government delegated a "public function" to the private actor. See Single Moms, Inc. v. Montana Power Co., 331 F.3d 743, 747 (9th Cir. 2003); see also West v. Atkins, 487 U.S. 42, 56 (1988); Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982); Penn v. Bd. Of Dirs. Of City Trusts of Philadelphia, 353 U.S. 230, 231 (1957).

The facts alleged by Plaintiffs fail to plead a basis for recovery against Stanford or Dr. Kapoor as acting under color of state law. The Court takes judicial notice that Stanford Hospital is a private entity. Courts have held that hospitals are not exclusively state provided services. Additionally, "private hospitals do not act under color of state law for § 1983 purposes even if they receive State funding and are subject to State regulations." See Miriam P. V. City of New York, 163 A.D. 2d 39, 41 (App. Div. N.Y. 1990); See also Blum v. Yaretsky, 457 U.S. 991, 1003-04 (1982). In this case, Plaintiffs do not allege that there was coercion by the state government of Dr. Kapoor and Stanford Hospital's actions.

The sole basis of Plaintiffs' claims against Defendants Stanford and Dr. Kapoor under Section 1983 is that by contacting Child Protective Services, notifying them of the possible staph infection and requesting that D'Shawn be brought back to the hospital, these private Defendants engaged in a joint action with state officials sufficient to make them liable under Section 1983. In other words, Plaintiffs contend that "acting together with state officials" necessarily means acting under color of state law. The law does not support this generality.

In addition, Plaintiffs' Section 1983 Causes of Action are based on joint participation with the moving government Defendants. Since the Court has concluded the facts alleged by Plaintiffs do not allege constitutional violations by Defendants Nieves and County, it follows that whatever action taken by Stanford Hospital and Dr. Kapoor cannot be joint action to violate constitutional rights.

Moreover, a private person who has an independent duty to act, is not acting jointly with a government actor simply because the government takes some action based on the independent action of the private individual. As providers of health services, Dr. Kapoor and Stanford Hospital are required under California Penal Code § 11166(f)(3), to report any suspected or known acts of abuse or neglect to a governmental official. The Complaint alleges that Dr. Kapoor reported the mother's refusal to bring D'Shawn in to have him examined for a potentially life threatening staph infection. The allegations that the governmental bodies took these actions based on that report do not convert Stanford Hospital or Dr. Kapoor, otherwise private conduct into actions under color of law. Accordingly, Plaintiffs' Section 1983 claims against Defendants Dr. Kapoor and Stanford Hospital are dismissed.

### b. **Plaintiffs' Sixth Cause of Action, Section 1985 conspiracy claim.**

The elements of a Section 1985 claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir. 1998). In addition, an indispensable element of the conspiracy claim is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971). Under Section 1985, "[a] mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 626 (9th Cir. 1988).

Plaintiffs contend that "fact allegations incorporated by reference into the conspiracy claims set out the overt acts in considerable detail, including particulars concerning key communications between the conspirators," and that the factual bases ". . . sufficiently allege their wilful participation in the conspiracies together with state actors, and as to § 1985 conspiracy alleged in the Sixth Cause of Action, sufficiently allege a conspiratorial purpose to violate Plaintiffs' rights to equal protection." (Plaintiffs' Opp'n to Stanford's Motion at 4.)

1      A close examination of the facts in Plaintiffs' Complaint reveals only a series of phone calls
2 conducted in an ordinary course of reporting a possible child neglect situation. Dr. Kapoor called Nancy
3 Nieves, a social worker, only after her repeated phone calls requesting that Ms. Windom brings D'Shawn
4 back into the hospital for treatment after tests showed that "it was possible that [D'Shawn] had an infection
5 in his blood," were ignored. (Complaint ¶ 12.) Though Plaintiffs contend that D'Shawn was
6 "asymptomatic," there are no facts alleged upon which a claim could be based that the mother was in a
7 better position to evaluate the results of the blood tests. Under the factual circumstances described in the
8 Complaint, the Court finds that it was reasonable for Dr. Kapoor to believe and therefore, reported a
9 possible child neglect situation to child protective services.

10      Nancy Nieves, a social worker whose job is to follow up on reports of possible child abuse or
11 neglect, did so in D'Shawn's case by calling East Palo Alto Police. Again, under the factual circumstances
12 presented in the Complaint, the Court finds that it was reasonable for Dr. Kapoor to believe that immediate
13 hospitalization or treatment was necessary considering the results of the blood tests. Accordingly, it was
14 reasonable for Ms. Nieves to contact the police considering Ms. Windom's determination that D'Shawn
15 needed no medical evaluation.

16      When the police Officers arrived, they called Dr. Kapoor to "seek further information." The
17 Complaint admits that the only thing Dr. Kapoor told the Officers was that "D'Shawn needed to come to
18 Stanford Hospital because the possibility existed that he had a life-threatening disease." (Complaint ¶ 13.)
19 It appears that Plaintiffs rely on this phone call to argue Dr. Kapoor's "overt act" with state officials.
20 However, responding to a medical inquiry from the police Officers is not the same as an overt agreement to
21 deprive the Plaintiffs of their constitutional rights. The Court finds that these facts fail to allege that
22 Defendants agreed among themselves to deprive Plaintiffs of their equal protection of the law.
23 Furthermore, aside from stating that they are "Afro-American," Plaintiffs do not allege that the actions taken
24 against them were motivated by any racial or class-based discriminatory animus. Rather, Plaintiffs merely
25 assert throughout their Complaint that Defendants conspired to deprive them of their constitutional rights.
26      Plaintiffs do not plead any meetings, communications, correspondence, or any other indicia of
27 conspiracy to commit acts designed and intended to deprive Plaintiffs of their rights. Plaintiffs have failed to

plead specific facts demonstrating that Stanford and Dr. Kapoor wilfully participated with state actors to generate a conspiracy. Accordingly, Plaintiffs' Section 1985 claim against Defendants Dr. Kapoor and Stanford Hospital is dismissed.

### 3. **Plaintiffs' State Law Claims.**

Plaintiffs rely on the same conduct which is the basis of their federal civil rights claims as a basis for state law tort claims.

California Child Abuse and Neglect Reporting Act codified as Penal Code § 11166(f)(3) provides that a physician who has knowledge of, or observes a child in his professional capacity whom he knows or reasonably suspects has been the victim of abuse or neglect, must report the known or suspected activity. Further, any mandated reporter failing to report neglect or reasonable suspicion of neglect is guilty of a misdemeanor and subject to imprisonment. Id. Neglect is defined as negligent treatment of a child by a person responsible for the child's welfare and where harm to the child's health or welfare is indicated or threatened. Id. Neglect includes the failure to protect a child from a medically diagnosed, potentially fatal illness or infection.

Individuals required to report child neglect or abuse are immune from civil liability for reports of known or suspected instances of abuse or neglect or for providing Child Protective Services with access to the victim of such known abuse or neglect. Cal. Penal. Code § 11172. Moreover, absolute immunity for mandated reporters applies even to negligent, reckless, or intentionally false reports. Krikorian v. Barry, 196 Cal.App. 3d 1211 (1987); Stecks v. Young, 38 Cal.App. 4th 365 (1995); Mr. Thomas v. Chadwick, 224 Cal.App. 3d 813 (1990).

All of the conduct upon which Plaintiffs' claims are based on the fact that Dr. Kapoor contacted Child Protective Services under the mandatory reporter duty imposed upon her through the Child Abuse and Neglect Reporting Act. Therefore, all of the state law claims, including the invasion of privacy claim under the California Constitution, against Stanford and Dr. Kapoor are dismissed. There are no facts which would allow the Plaintiffs to overcome this immunity. Therefore, these Causes of Action are dismissed with prejudice.

### 4. **Plaintiffs' California Civil Conspiracy Claim.**

As an initial matter, if the Court retains jurisdiction over this state law claim, it must apply the substantive law of California to judge the merits of the claim. However, it is free to impose federal procedural law to the conduct of the litigation. In that regard, Federal Rule of Civil Procedure 9(b) "requires more than conclusory allegations of a conspiracy." S. Union Co. v. Southwest Gas Corp., 165 F.Supp.2d 1010, 1020 (D.Ariz. 2001) (applying California civil conspiracy law). To meet the stringent civil conspiracy pleading requirements of Rule 9(b), a "plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." Alfus v. Pyramid Tech. Corp., 745 F.Supp. 1511, 1521 (N.D.Cal.1990). "It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement." Id. (citation omitted).

Plaintiffs' Twelfth Cause of Action states: "Defendants entered into a conspiracy with each other for the purpose of invading plaintiffs' privacy, falsely imprisoning plaintiff D'Shawn Thomas, assaulting and battering plaintiff D'Shawn Thomas, and inflicting emotional distress on plaintiffs." (Complaint ¶ 88.) The Court finds that Plaintiffs' allegations of civil conspiracy are sparse, conclusory, and unspecific. Rather than offering the Court specific facts to support the inference of an agreement among all of the Defendants to deprive Plaintiffs of their rights, Plaintiffs have offered nothing more than conclusory allegations. Plaintiffs' Complaint does not reference a single document, participant, or conversation that was involved in the alleged agreement for the purpose of invading Plaintiffs' privacy.

However, the Court chooses not to rest its decision on the lack of details. There are sufficient details to determine if there is a basis for recovery for tortious conduct on the part of Stanford or Dr. Kapoor. If there is no basis for recovery for tortious conduct, the conspiracy claim must be dismissed.

Under the laws of the State of California, when pleading a claim for civil conspiracy, the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. Kidron v. Movie Acquisition Corp., 40 Cal.App. 4th 1571 (1995). Under California law, civil conspiracy is not an independent tort, but rather a "legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate

1  tortfeasors a common plan or design in its perpetration." <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>,
2  7 Cal.App. 4th 503, 510-11 (1994).

3  There is no dispute that Dr. Kapoor placed a call to Ms. Nieves.  However, the phone call was in
4  furtherance of Dr. Kapoor's examinations and blood tests of D'Shawn.  The Complaint alleges that Dr.
5  Kapoor believed that D'Shawn potentially had a serious and life threatening staph infection.  As admitted
6  by the Plaintiffs in their Complaint, Dr. Kapoor's repeated requests to have D'Shawn readmitted to the
7  hospital were "declined" by Ms. Windom.  (Complaint ¶ 12.)  Under these circumstances, even considering
8  the facts in a light most favorable to Plaintiffs, none of Dr. Kapoor's conduct was tortious.

9  Plaintiffs' Complaint states: "At the Stanford Hospital emergency room, D'Shawn was examined
10 and again found to be asymptomatic.  He was nonetheless admitted to Stanford Hospital on August 2,
11 2003 for six days of intravenous and intramuscular antibiotics to combat a nonexistent staphylococcus areas
12 infection." (Complaint ¶ 14.)  At best, as Defendants have alluded to during oral arguments and in their
13 briefs, these allegations may support a medical negligence action not civil rights claims or intentional tort
14 claims.  (Stanford's Reply at 1:13.)  Nothing in this Order is intended to address whether Plaintiffs have a
15 medical negligence claim.

16 Even more tellingly, Plaintiffs admit that with respect to "their remaining state tort claims against
17 Stanford Hospital and Dr. Kapoor, the § 11166 immunity concededly [sic] applicable, but is largely
18 inapplicable in that said claims focus primarily on the conduct of Stanford Hospital and its employees during
19 the weeklong [sic] hospitalization that ensued *after* Dr. Kapoor made her disclosures of the medication
20 information to other defendants."  (Plaintiffs' Opp'n to Stanford's Motion at 5.)

21 To the extent that Plaintiffs concede the state tort claims against these Defendants should be
22 redrawn to exclude the conduct leading up to the transportation of D'Shawn to the hospital, the Court
23 declines to exercise supplement jurisdiction over the state tort claims arising out of Defendants' conduct
24 after D'Shawn was admitted since all of the federal claims have been dismissed.

## **V. CONCLUSION**

26 The Court GRANTS Defendants' Stanford Hospital, Dr. Maya Kapoor, San Mateo County, and
27 Nancy Nieves Motions to Dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6) with prejudice.

As these motions are brought by Stanford Hospital, Dr. Kapoor, County, and Nieves, this Court needs not, and does not, consider these claims as they relate to Officer Torres, Officer Taflinger, and City of East Palo Alto, including whether there was probable cause to arrest Ms. Windom and detain her for ten days.

To avoid confusion as the case proceeds, within 15 days of this Order, Plaintiffs shall file an amended complaint which contains only the remaining Defendants.

Plaintiffs and Defendants the East Palo Alto Police Department, and two individual Police Officers shall appear at the scheduled case management conference on December 19, 2005 at 10 a.m. Pursuant to the Civil Local Rules, the parties shall file a joint case management statement no later than ten (10) days before the conference.

Dated: November 28, 2005

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

David Sheuerman dsheuerman@smtlaw.com
David A. Silberman dsilberman@co.sanmateo.ca.us
Jeffrey Michael Vucinich jvucinich@clappmoroney.com
Kathleeen A Humphrey khumphrey@smtlaw.com
Michael Edward Adams equitist@earthlink.net

**Dated: November 28, 2005**               **Richard W. Wieking, Clerk**

                                                     **By:   /s/ JW Chambers**
                                                          **Ronald L. Davis**
                                                          **Courtroom Deputy**

**United States District Court**
For the Northern District of California